1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>　　　　　　　　Plaintiff, )<br>　　　　　　　　　　　　　)<br>vs. )<br>　　　　　　　　　　　　　)<br>KEVIN EPPENGER, )<br>　　　　　　　　Defendant. )<br>_____ ) | Case No. 2:11-cr-00412-LDG-CWH<br><br>**FINDINGS AND RECOMMENDATION**<br><br>Defendant's Motion to Suppress (# 18) |

     This matter is before the Court on Defendant's Motion to Suppress (#18), filed April 5, 2012; the Government's Response (#20), filed April 22, 2012; and Defendant's Reply (#21), filed April 25, 2012.  The Court conducted an evidentiary hearing in this matter on April 25, 2012, and has also considered Supplemental briefs filed by the parties.  In particular Defendant's Supplement to Motion to Suppress (#26), filed May 9, 2012; the Government's Response in Opposition to Defendant's Supplemental Brief (#28), filed May 23, 2012; and Defendant's Reply (#31), filed May 31, 2012.  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule IB 1-4 the undersigned issues the following Findings and Recommendation.

### I.  Background

     Defendant Kevin Eppenger ("Defendant") is charged by criminal indictment filed November 29, 2011 with being a felon in unlawful possession of a firearm in violation of Title 18, United States Code 922(g)(1) and 924(a)(2).   By way of this motion, Defendant moves to suppress all tangible and testimonial evidence seized during his arrest on September 2, 2011.

     Defendant concedes that he does not have standing, for purposes of the Fourth Amendment, to request suppression of the firearms.  Nevertheless, Defendant moves for suppression of the

fingerprints taken as part of his arrest, the results of a buccal swab[1] seized pursuant to a search warrant, and any statements made subsequent to his arrest.[2]   Defendant contends that his Fourth Amendment rights were violated because police lacked probable cause to detain and arrest him and, therefore, were not justified in taking his fingerprints.  Defendant also asserts that the search warrant authorizing the buccal swab was defective.  The Government argues that there was probable cause for both the arrest and the taking of fingerprints incident to the arrest.  Also, the Government contends that the buccal swab of Defendant was conducted pursuant to a lawfully issued search warrant.

### III.  Evidence before the court

At about 11:00 a.m. on September 2, 2011, Las Vegas Metropolitan Police Department ("LVMPD") Detectives Moreno and Souder were on foot patrol in an apartment complex located at 1950 North Walnut Street in Las Vegas, Nevada.  The detectives are members of the LVMPD Gang Crimes Unit.  At the time of the patrol, both detectives were wearing green military fatigue style uniforms with black belts containing various weapons and equipment.

As part of their patrol, the detectives were talking to individuals in the apartment complex. The detectives saw Defendant walk in the complex carrying a green bag.  After seeing the detectives, Defendant turned into an alcove where an outdoor stairwell was located, walked upstairs, and knocked on the door of apartment 262.  The detectives temporarily lost sight of Defendant, but within a minute, noticed that he was at the top of the stairs no longer carrying the green bag.  Consequently, the detectives asked Defendant to come down the stairs and talk with them.  Defendant complied and, according to the detectives, maintained a cooperative and calm demeanor.  Defendant provided his name and social security number.  He also indicated that he had an arrest record, which the Detectives confirmed.  When asked, Defendant acknowledged that he

---

[1] A buccal swab collects DNA from the cells on the inside of a person's cheek.

[2] By way of his motion, Defendant also sought suppression of any statements that he may have made subsequent to his arrest.  During the hearing Government counsel indicated that there is no fingerprint evidence related to the firearms which were seized, but could not discount the use of fingerprints for other purposes.  The parties agreed that no incriminating statements were made by Defendant which are the subject of the proceeding.

did not live in apartment 262, but his girlfriend did.

Thereafter, Detective Moreno asked Defendant if he could look in the green bag that Defendant had been carrying. Defendant agreed. With Detective Moreno following, Defendant walked up the stairs, opened the door about six to twelve inches, and reached into the opening to retrieve the bag. The door was not locked and Defendant did not step into the apartment. Detective Moreno testified that he was able to see into the apartment through the partially opened door and noticed a dark blanket hanging in front of the entrance of the door, which obstructed his view into the apartment. Detective Moreno also testified that he noticed bright lights when Defendant pushed the blanket aside to retrieve the green bag. He also recognized a strong odor of marijuana from inside the apartment upon the door opening. After retrieving the bag, Defendant closed the door and returned to the bottom of the stairwell with Detective Moreno behind him. At the bottom of the stairwell, Detective Moreno inspected the contents of the bag, which contained an electronic game console.

After inspecting the bag, Detective Moreno asked Defendant whether the apartment was being used to grow marijuana. Detective Moreno testified that, after he asked this question, Defendant's demeanor changed. Defendant allegedly stopped answering questions and had what Detective Moreno described as blank or "1000-yard" stare. Detective Moreno also testified that throughout the encounter Defendant made no furtive movements and showed no signs of being under the influence of marijuana. Nevertheless, Detective Moreno testified that he became alarmed due to the alleged change in demeanor and placed Defendant in handcuffs for "officer safety." After he was handcuffed, Defendant was placed on the stairs and orally apprised of his *Miranda* rights. Thereafter, the detectives began their narcotics investigation.

At the outset of the investigation, Detective Moreno contacted the apartment complex manager and learned that the apartment was leased to Ms. Trelisa Clayborn. Detective Moreno left a telephonic message for Ms. Clayborn and she returned the call about 20 minutes later. She indicated that she sometimes lived at the apartment and Defendant is her boyfriend, but he did not live in the apartment. She refused to come to the apartment or to consent to its search. Detective Moreno did not recall whether he inquired of Ms. Clayborn whether Defendant had permission to

3

1  be in the apartment.

2  During his discussion with the apartment manager, Detective Moreno also learned that

3  Defendant was listed as an emergency contact on the lease for the apartment.  On cross-

4  examination, Detective Moreno agreed that it was not a crime to enter the apartment where

5  marijuana had been smoked.  However, he testified that Defendant was arrested at about 11:50 a.m.

6  for trespassing because he did not live in the apartment and he was not on the lease.  Detective

7  Moreno also testified that, in deciding to arrest Defendant, he considered Ms. Clayborn's statement

8  that Defendant did not live there and there were "no trespassing" signs evident around the

9  apartment complex.  Subsequent to his arrest, Defendant was searched.  No contraband was

10  discovered.  Immediately after his arrest, Defendant was placed in a patrol car in the vicinity of the

11  apartment and formally booked into temporary police custody at 1:56 p.m.

12  At about the time Defendant was booked into temporary custody, Detective Moreno

13  telephonically applied for a search warrant to search the apartment.  The affidavit supporting this

14  warrant generally contained the facts provided above in order to support the seizure of evidence

15  related to illegal drug trafficking.  The first search warrant was issued.  As a result of the search, the

16  detectives found small amounts of marijuana in the apartment.  There was no evidence of

17  marijuana having been used or of a marijuana growing operation.  While conducting the initial

18  search, detectives also noticed firearms and property they suspected was stolen in the apartment.

19  Because the initial search warrant related to marijuana and related evidence, Detective

20  Moreno telephonically applied for a second search warrant.  At about 1:43 p.m., Detective Moreno

21  obtained a search warrant from a different judge than the one who authorized the first search.  This

22  second warrant authorized the detective to search for and seize the firearms and suspected stolen

23  property in the apartment.  It also authorized the taking of a buccal swab from Defendant.

24  According to Detective Moreno, the purpose of the buccal swab was to prove that Defendant had

25  possessed the firearms discovered in the apartment.[3]   Defendant's fingerprints were taken when he

26  was booked into the county jail on the trespassing arrest.  A buccal swab was taken at the jail.

27  _____

28  [3]  The affidavit in support of the second search warrant is set forth in more detail *infra* at p. 13.

4

### IV.  Applicable Legal Authority & Analysis

The Fourth Amendment addresses "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967).  It protects "people not places." *Id.*  Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

#### A.  The Initial Encounter

The Supreme Court has long held that police may stop a citizen at any time, ask for identification and other information, and even request permission to search so long as a reasonable person in the citizen's position would recognize that he or she is free to leave or terminate the encounter. *See Generally,  Terry v. Ohio*, 392 U.S. 1 (1968);  *Florida v. Royer*, 460 U.S. 491 (1983);  *Florida v. Rodriguez*, 469 U.S. 1(1984).  Indeed, police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions because "mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991).

Here, the Court finds that the initial encounter did not violate the Fourth Amendment. Defendant was not improperly seized when he voluntarily responded to Detective Moreno's initial questions regarding his criminal background or residence.  Nor was Defendant improperly seized when he agreed to retrieve the green bag from his girlfriend's apartment and allowed the detectives to search the bag.  A reasonable person in Defendant's position would have felt free to walk away from the detectives or free to refuse to answer the questions and terminate the encounter.[4]

---

[4]  There is no suggestion that the consent to search the bag was anything less than voluntary. *See United States v. Patayan-Soriano*, 361 F.3d 494, 502 (9th Cir. 2004) (identifying five factors courts in the Ninth Circuit use to determine the voluntariness of consent to search and reiterating that "[n]o one factor is determinative in the equation").  Defendant was not in custody when he consented.  The detectives did not have their weapons drawn. There is no evidence of any threat made to secure the consent.  Nor is there anything suggesting Defendant did not have authority to provide consent to search the bag. *See United States v. Matlock*, 415 U.S. 164, 94 S.C. 988, 39 L.Ed.2d 242 (1974) (consensual search is reasonable when the consent-giver has authority over the area searched)

1

2    **B. Investigatory Detention**

3        The consensual nature of an encounter ends when a reasonable person would not feel free to

4    leave or otherwise terminate the encounter.  *See Martinez-Medina v. Holder*, 673 F.3d 1029, 1034

5    (9th Cir. 2011) (citing *Bostick*, 501 U.S. at 434-34).  Generally,  a seizure for Fourth Amendment

6    purposes occurs "when the officer, by means of physical force or show of authority, has in some

7    way restrained the liberty of a citizen." *Terry*, 392 U.S. at n.16.  "A person has been 'seized' within

8    the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the

9    incident, a reasonable person would have believed that he was not free to leave." *United States v.*

10   *Mendenhall*, 446 U.S. 544, 554 (1980).  An investigatory detention, while constituting a seizure,

11   does not violate the Fourth Amended provided that the police have reasonable suspicion that

12   "criminal activity may be afoot."  *See United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also*

13   *Terry*, 392 U.S. at 30.

14       In assessing whether an officer has reasonable suspicion to conduct an investigatory

15   detention, reviewing courts look at the "totality of the circumstances" to see whether the detaining

16   officer had a "particularized and objective basis" for suspecting legal wrongdoing.  *Id.* "An

17   investigatory stop must be justified by some objective manifestation that the person stopped is, or is

18   about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see*

19   *also United States v. Sigmond-Ballasteros*, 285 F.3d 1117, 1121 (9th Cir. 2002) (citing *Arvizu*, 534

20   U.S. at 273).  A reviewing court's determination of reasonable suspicion is a process that "allows

21   officers to draw on their own experience and specialized training to make inferences from and

22   deductions about the cumulative information available to them that 'might well elude an untrained

23   person.'" *Arvizu*, 534 U.S. at 273 (citing *Cortez*, 449 U.S. at 418).  The Fourth Amendment is not

24   violated as long as an officer's action is supported by reasonable suspicion to believe that criminal

25   activity is afoot.  The officer may observe factors that are by themselves consistent with innocence,

26   but collectively they amount to reasonable suspicion.  *Id*. at 273-74. Reasonable suspicion is not a

27   matter of hard certainties, but of probabilities. *Cortez*, 449 U.S. at 417-18.

28       When Detective Moreno placed handcuffs on Defendant and advised him of his *Miranda*

     rights, Defendant was seized for Fourth Amendment purposes because a reasonable person in his

circumstances would not believe that he was free to leave.[5]   Although a close call, the court finds

that this initial detention for the purpose of conducting the narcotics investigation was justified.

Detective Moreno noticed the smell of marijuana and the blanket hanging in front of the apartment

door and therefore had a reasonable suspicion that marijuana would be located there.   Defendant

was present at the apartment, had demonstrated he had access to the apartment, and admitted that

his girlfriend lived at the apartment.

Under these circumstances, it was reasonable to detain Defendant and inquire into his

knowledge of the suspected marijuana in the apartment. *See United States v. Patterson*, 648 F.2d

625, 633 (9th Cir. 1981) (A valid stop can include the momentary restriction on a person's freedom

of movement to maintain the status quo while making an initial inquiry).   Otherwise, an officer

could not perform a preliminary investigation of an alleged wrongdoing. *United States v. Thomas*,

863 F.2d 622, 628 (9th Cir. 1988).   Even in cases where "the conduct justifying the stop [is]

ambiguous and susceptible of an innocent explanation," *Terry* permits detention so the officers can

resolve the ambiguity. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (citing *Terry*, 392 U.S. at 30).

## C.  Arrest for Trespassing

After Defendant was handcuffed and detained pending the narcotics investigation, Detective

Moreno had no further discussions with Defendant.   Over the next 20 minutes, Detective Moreno

confirmed that Defendant was the boyfriend of the lawful resident of the apartment and does not

live at the apartment.   Detective Moreno also discovered, through his conversation with the

apartment manager, that Defendant was listed on the lease as an emergency contact for the

apartment resident.   Nevertheless, Defendant was arrested at 11:50 a.m. for the specific crime of

trespassing in violation of NRS 207.200.[6]

---

[5] Detective Moreno testified that handcuffs were applied for "officer safety" during the narcotics
investigation.

[6] In response to the question, "what happened to change the detention for investigation to arrest for
trespass," Detective Moreno's indicated that "my sergeant was out there at the scene and (Defendant) ended up
getting placed under arrest for trespassing."

1    There is no dispute that Defendant was arrested without a warrant.  A warrantless arrest of

2    an individual in a public place for a felony, or a misdemeanor committed in the officer's presence,

3    is consistent with the Fourth Amendment if the arrest is supported by probable cause.  *Maryland v.*

4    *Pringle*, 540 US 366, 370 (2003); *see also, Atwater v. Lago Vista*, 532 US 318, 354 (2001) ("If an

5    officer has probable cause to believe that an individual has committed even a very minor criminal

6    offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.")

7    "Probable cause exists when, under the totality of the circumstances known to the arresting officers,

8    a prudent person would have concluded that there was a fair probability that [the suspect] had

9    committed a crime." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) (internal

10   quotation marks and citations omitted).  Absent probable cause, a warrantless arrest is illegal. *Id*.

11   Police officers may rely on the totality of facts available to them when determining whether

12   probable cause exists to make an arrest.  *See United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir.

13   1989) (officers' experience and expertise); *Illinois v. Wardlow*, 528 U.S. 119, 124, (2000) (nature

14   of the area); *United States v. Koshnevis*, 979 F.2d 691, 695 (9th Cir. 1992) (suspect's contradicting

15   himself and nervousness were a part of the probable cause determination).  If probable cause is

16   established at an early stage of the investigation, it may dissipate later if the investigating officer

17   later learns additional information that decreases the likelihood that the defendant has engaged, or

18   is engaging, in criminal activity.  A person may not be arrested, or must be released from arrest, if

19   previously established probable cause has dissipated.  "As a corollary . . . of the rule that the police

20   may rely on the totality of facts available to them in establishing probable cause, they also may not

21   disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th

22   Cir. 1988); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("The continuation of even a lawful

23   arrest violates the Fourth Amendment when the police discover additional facts dissipating their

24   earlier probable cause."); *see also United States v. Ortiz-Hernandez*, 427 F.3d 567, 573-574 (9th

25   Cir. Or. 2005) (same).

26   Defendant was arrested for trespassing under the provisions of  Nevada Revised Statute

27   ("NRS") § 207.200.  That statute provides:

28   1. Unless a greater penalty is provided pursuant to NRS 200.603, any person who, under

circumstances not amounting to a burglary:

(a) Goes upon the land or into any building of another with intent to vex or annoy the owner or occupant thereof, or to commit any unlawful act; or

(b) Willfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass,

is guilty of a misdemeanor.

The statute further lists the methods by which a sufficient warning against trespassing can be made, such as by oral warnings or through the posting of warning signs of certain dimensions and locations.  NRS 207.200(2)(b), (d).  A reasonable interpretation of the statute would dictate that posted warning signs are subject to an owner or occupant granting permission to an individual visiting her apartment.  In other words, a "no trespassing" sign does not prevent the property owner from granting an individual access.  To suggest otherwise would justify the arrest of any visitor to the apartment complex, regardless of the property owner's permission or legitimate business of the visitor.   Such a construction is absurd and Nevada statutes are construed so as to avoid absurd results.  *See e.g., G.C. Wallace, Inc. v. Eighth Judicial Dist. Court*, 262 P.3d 1135, 1138 (Nev. 2011).

Here, Detective Moreno testified that he did not believe that Defendant had annoyed anyone, committed any crime, or been orally warned not to go into the apartment complex by either the apartment manager or the resident of the apartment, Defendant's girlfriend.   Further, there is no evidence suggesting that Defendant's presence violated any apartment complex rules or the directions of the apartment manager.  For example, there is no evidence that the apartment manager requested Defendant be removed from the property.  Importantly, Detective Moreno knew that Defendant was the boyfriend of the apartment's resident.  He also knew that Defendant was listed as an "emergency contact" on the apartment lease.  At least under certain circumstances, Defendant was a person authorized to be present at the apartment.  Moreover, despite speaking with the apartment resident, Detective Moreno did not ask whether Defendant had permission to be at the apartment.

Based on a review of the totality of the circumstances as testified to by Detective Moreno, the Court finds that there was no probable cause to effectuate a warrantless arrest for violation of

9

NRS 207.200.  The facts that Defendant did not live there and was not on the lease do not constitute probable cause for a warrantless trespass arrest.  As previously noted, if actual residence or signatory to a lease were the standard to decide whether a trespass has occurred, every visitor to an apartment complex would be potentially guilty of misdemeanor trespass, which is an absurd result.  Even when combined with the "no trespassing" sign, the Court finds there is insufficient information in this situation to support probable cause for the warrantless arrest.  This is not to suggest that the no trespassing signs have no legal consequence.  To the contrary, NRS 207.200 would allow the arrest of individuals who ignore the signs under some circumstances.  The Court simply cannot conclude that, based on the circumstances presented, a prudent person would believe there was a fair probability that Defendant violated the trespass statute.  *See United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) ("Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.")

Because the Court finds that there was no probable cause to arrest Defendant for trespassing under NRS 207.200, Defendant's right to be free from unreasonable search and seizure under the Fourth Amendment was violated.

**D.  Suppression of Fingerprints**

As a direct result of the unlawful trespassing arrest, Defendant's fingerprints were taken when he was processed and booked into the county jail.  Fingerprint evidence may be suppressed as "fruit of the poisonous tree."  *See Davis v. Mississippi*, 394 U.S. 721, 724 (1969) ("All evidence obtained by searches and seizures in violation of the Constitution is . . . inadmissible in . . . court.  Fingerprint evidence is no exception to this comprehensive rule.").  *See also Hayes v. Florida*, 470 U.S. 811, 813 (U.S. 1985) (same).  Accordingly, the court finds that the fingerprint evidence seized when Defendant was booked for trespass at the County jail should be suppressed as the fruit of an illegal arrest.[7]

---

[7]  The court notes that fingerprint evidence establishing the identity of the Defendant cannot be suppressed.  The "body" or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation

1

### E.  Suppression of DNA Evidence

2   After Defendant was arrested and booked at the county jail, and pursuant to the second

3 search warrant issued by a state municipal judge, a buccal swab was taken.  Presumably, the buccal

4 swab may be used to prove, through matching DNA evidence, that Defendant possessed the

5 weapons found in the apartment.  Although not included in his original motion to suppress,

6 Defendant argues in his supplemental brief that he is entitled to an evidentiary hearing under

7 *Franks v. Delaware*, 438 U.S. 154 (1958).  Defendant argues that Detective Moreno omitted

8 material information from the affidavit for the second search warrant.  The cumulative effect of

9 such action is to "remove all doubt as to the existence of probable cause existing in the four corners

10 of the warrant."  Accordingly, Defendant argues that the affidavit in the second search warrant

11 "contains insufficient evidence which would provide probable cause that  a nexus exists between

12 Defendant and apartment 262 or any item contained therein."  In response, the United States

13 contends that the warrant is valid on its face.

14   As a general matter, a defendant is entitled to an evidentiary hearing on the validity of the

15 affidavit underlying a search warrant if the defendant can make a substantial preliminary showing

16 that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions,

17 and (2) the affidavit cannot support a finding of probable cause without the allegedly false

18 information.  *See United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000); *see also Franks*,

19 438 U.S. 154 (1978); *United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985) (holding that a

20 defendant could challenge a facially valid affidavit by making a substantial preliminary showing

21 that the affiant intentionally or recklessly omitted facts required to prevent a technically true

22 statement in the affidavit from being misleading).  "To justify a hearing, a defendant must make

23 specific allegations including one of a deliberate falsehood or reckless disregard for the truth and

24 accompany such a claim with a detailed offer of proof."  *United States v. Craighead*, 539 F.3d

25

26 occurred.  *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).  *See also, United States v. Garcia-Beltran*, 443 F.3d
27 1126, 1132 (9th Cir. Or. 2006) (there is no sanction to be applied when an illegal arrest only leads to discovery of
the man's identity).  The fingerprint evidence in this case, however, is not offered to establish identity, which is
28 uncontested.

1073, 1080 (9th Cir. 2008) (citation omitted).  Intentional or reckless omissions may also provide

grounds for a *Franks* hearing.  *United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007).

If a defendant makes the requisite preliminary showing, a hearing is conducted to determine

the validity of the warrant.  *Franks v. Delaware*, 438 U.S. 154 (1978).  Suppression should result if,

after excising the false statements from the affidavit, there is no probable cause for the warrant.

*See Franks*, at 171-172; *see also United States v. Kyllo*, 37 F.3d 526, 529-30 (9ᵗʰ Cir. 1994)

(holding *Franks* hearing was required when material facts were omitted that substantially

undermined probable cause of the search warrant); *see also United States v. DeLeon*, 979 F. 2d

761, 764 (9ᵗʰ Cir. 1992) (holding a deliberate or reckless omission by a government official who is

not the affiant can be the basis for a *Franks* suppression).  Generally, clear proof of a deliberate or

reckless omission is not required as such proof is reserved for the evidentiary hearing.  *United*

*States v. May*, 2009 WL 1542557 *9 (D. Nev.) (citations omitted).  "Deliberate intent to deceive or

reckless disregard for the truth can be inferred from the omission of materials facts that would have

negated probable cause."  *Id*.  Nevertheless, the "omission rule" does not require an affiant to

provide information about every possible theory that would controvert the good faith assertion of

probable cause.  *Craighead*, 539 F.3d at 1081.  "Omissions or misstatements resulting from

negligence or good faith mistakes will not invalidate an affidavit which on its face establishes

probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (citation omitted).

The undersigned has reviewed Defendant's request for a *Franks* hearing and finds that the

standard necessary to trigger a hearing has been met.  However, because the court has already

conducted an evidentiary hearing regarding the facts surrounding the application for the warrant

and the warrant is currently before the court, a further hearing is unnecessary.

### 1.     The Affidavit

The transcript of the oral affidavit, in pertinent part, sets forth the following facts to

establish probable cause to justify the seizure of the buccal swab as well as the weapons and

alleged stolen property in the apartment:

> Your affiant requests a DNA buccal swab cells from inside the mouth of Kevin Eppenger,
> LVMPD ID 1961722 , who is currently detained at 330 S. Casino Center, Las Vegas,
> Nevada, County of Clark.  The property here and before described constitutes evidence

which tends to demonstrate that the criminal offense of Prohibited Person Possession of Firearm and Possession of Stolen Property have been committed.  In support of the assertion to constitute the existence of probable cause the following facts are offered:  On 9/2/11 at approximately 1550 hours LVMPD SWAT (Red Team) conducted the service of a Search Warrant at 1950 N. Walnut, apartment #262, Las Vegas, NV 89110.  The Honorable Judge Timothy Williams granted a Search Warrant to the above address on 9/2/11 at approximately 1357 hours.  After the LVMPD SWAT Team served the warrant and rendered the residence safe your affiant observed two semi-auto handguns laying on the ground in the northeast bedroom of the apartment that were in plain view.  1: Ruger model SR9, black stainless steel semi-auto with an unknown serial number.  2: Walter, model P-22, black steel semi-auto handgun with unknown serial number.  Several handgun magazines were also in plain view in the same bedroom.  Due to Kevin Eppenger ID # 1961722, being a convicted felon for Assault with a Deadly Weapon in 2005 out of Nevada Eppenger is not allowed to possess firearms.  Eppenger also has prior arrest for stolen property and burglary.  Trelisa Clayborn who is on the lease agreement to the apartment is the primary lessee.  She also has prior arrests for burglary and possession of stolen property.  Your affiant observed several flat screen TVs and computer towers drives that were in plain view in the bedrooms and living room of the residence.  Based on Eppenger and Clayborn's prior arrest and through your affiant's training and experience I believe the televisions and computers to be stolen property.[8]

## 2. Probable Cause Determination

As a general rule, a search warrant may only issue upon a showing to a neutral magistrate that probable cause exists to support the proposed search.  The Supreme Court has described "probable cause" as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The magistrate must be provided with sufficient facts from which he may draw the inferences and form the conclusions necessary to a determination of probable cause.  *Giordenello v. United States*, 357 U.S. 480, 485-86 (1958).  Probable cause is to be determined on the basis of the "totality-of-the-circumstances." *Gates*, 462 U.S. at 230.  A magistrate judge's determination of probable cause is accorded significant deference.  *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995).  The issuance of a search warrant is upheld "if the issuing judge 'had a substantial bases' for concluding [that] probable cause existed based on the totality of the circumstances." *Ewing*, 588 F.3d at 1223.

After careful review, the court finds that the affidavit lacks any information which connects Defendant, or his DNA, to the apartment.  Absent this connection, there was no probable cause to believe that Defendant's DNA would be found in the apartment and no reason to seize the buccal

---

[8]  Government Exhibit 4.

swab.  As such, the issuance of the second search warrant in this case was erroneous.  The affidavit

identifies Defendant as a person with a prior felony conviction, indicates that he is currently in

custody, and notes that firearms and suspected stolen property were found in the apartment leased

by Ms. Clayborn during the execution of a prior search warrant.  The affidavit in question does

refer to the previous search warrant or the affidavit in support of the previous search warrant that

contains extensive information connecting Defendant to apartment 262, but neither the prior

affidavit nor the information in it was provided to the judge who authorized this warrant.  "The

facts upon which the magistrate bases his probable cause determination must appear within the four

corners of the warrant affidavit; the warrant cannot be supported by outside information." *United

States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir.1978).  *See also United States v. Thai Tung

Luong*, 470 F.3d 898, 904-905 (9th Cir. Cal. 2006) (citing  *United States v. Gourde*, 440 F.3d 1065,

1067 (9th Cir. 2006) (en banc) (quoting  *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir.

1971) ("[a]ll data necessary to show probable cause for the issuance of a search warrant must be

contained within the four corners of a written affidavit given under oath.").

**F.  Good Faith Exception**

In *United States v. Leon*, the Supreme Court set out an exception to the exclusionary rule

for a search conducted in good faith reliance upon an objectively reasonable search warrant. 468

U.S. 897, 925 (1984).[9]  Assuming the warrant was defective on its face because it failed to link

Defendant to the apartment, the question is whether the good faith reliance exception is applicable.

In *Leon*, the Supreme Court held that evidence obtained pursuant to a facially-valid search

warrant, later found to be invalid, is admissible if the executing officers acted in good faith and in

objectively reasonable reliance on the warrant. *Id*. at 922.  However, the Supreme Court noted that

---

[9]  The Supreme Court has stated that the exclusionary rule's "prime purpose is to deter future
unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against
unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). The good
faith reliance exception recognizes that if "the officer is acting as a reasonable officer would and should
act in similar circumstances[,] [e]xcluding the evidence can in no way affect his future conduct unless it
is to make him less willing to do his duty." *United States v. Leon*, 468 U.S. 897, 920 (1984) (citation
omitted).  Therefore, punishment is unwarranted where there can be no deterrent effect.

an officer cannot manifest objective good faith if the warrant he is relying on was supported by an affidavit that is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923 (citations omitted).[10] *See also, United States v. Hove*, 848 F.2d 137, 139 (9th Cir. Cal. 1988) (same); and *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994) (same). The affidavit "must establish at least a colorable argument for probable cause" for the exception to apply. *Luong, at* 903.

The test to determine whether the officer could reasonably rely upon the search warrant is whether the affidavit was sufficient to "create disagreement among thoughtful and competent judges as to the existence of probable cause." *Leon*, at 926. *See also, United States v. Tate*, 795 F.2d 1487, 1490 (9th Cir. 1986). Here, the affidavit offers no connection between Defendant and the apartment. For probable cause, an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched. *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). The affidavit does not offer an explanation of why it was believed the DNA evidence seized from Defendant would be incriminating; it simply recites that Defendant has a criminal record and weapons are located in the apartment.

It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched. *See United States v. Hendricks*, 743 F.2d 653, 654 (9th Cir. Ariz. 1984); *see also, United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (must be reasonable to seek evidence in the place to be searched). In this case, no facts related to the Defendant's DNA produced from the buccal swab

---

[10] There are four circumstances in which the good faith exception does not apply because reliance is per se unreasonable: (i) where an affiant misleads the issuing magistrate or judge by making a false statement or recklessly disregarding the truth in making a statement; (ii) where the magistrate or judge wholly abandons her judicial role in approving the warrant, acting only as a "rubber stamp" to the warrant application rather than as a neutral and detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith. *Leon,* 468 U.S. at 923-26.

15

were stated in the affidavit.   It is the court's view that the affidavit would not "create disagreement among thoughtful and competent judges as to the existence of probable cause."  Thus, any official belief in the existence of probable cause must be considered unreasonable. *United States v. Hove*, 848 F.2d 137, 139-140 (9th Cir. Cal. 1988).

Although Detective Moreno possessed sufficient facts to establish a clear connection between the Defendant and apartment 262, the affidavit is fatally flawed in that such evidence was not included.  In *Hove*, the written version of the police officer's dictated affidavit for search warrant which was presented to the judge inadvertently omitted information which connected the defendant with the place to be searched.  The Ninth Circuit reversed the district court which relied on those facts that were subjectively known to the law enforcement officer but not included in the affidavit or otherwise presented to the magistrate.  Stating that "the affidavit offers no hint as to why the police wanted  to search this residence," the Ninth Circuit held:

> *Leon* does not extend, however, to allow the consideration of facts known only to an officer and not presented to a magistrate. The *Leon* test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate.  *Leon*, 468 U.S. at 923. An obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge. "Reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon*, 468 U.S. at 915 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

*Hove*, 848 F.2d at 140.   Accordingly, the search warrant relied upon by officers in this matter to seize Defendant's buccal swab was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Thus, the *Leon* good faith exception does not apply, and the DNA buccal swab seized from Defendant pursuant to the second search warrant must be suppressed.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress (#18) be **GRANTED.**

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

   DATED this 24th day of July, 2012.

             _____
             C.W. Hoffman, Jr.
             UNITED STATES MAGISTRATE JUDGE